SHIRLEY M. HOWARD vs. THE EQUITABLE LIFE
ASSURANCE SOCIETY OF THE UNITED STATES.

Plymouth. September 17, 1971. — November 8, 1971.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Insurance,* Life insurance: double indemnity; Accident insurance;
Aircraft exclusion clause.

An exclusion clause in a life insurance policy providing that the
beneficiary could not recover under an accidental death provision
". . . if death resulted from . . . flight in, or descent from, any aircraft
of which the insured was a . . . member of the crew or in which he
was participating in . . . maneuvers as a member of the military,
naval or air forces of any country" was applicable and precluded
recovery of accidental death benefits by the beneficiary where the
insured, a member of a United States Air Force crew manning a
radar patrol plane, an activity in which he was frequently engaged,
survived a crash of the plane into the ocean uninjured but died the
next day from "asphyxia due to drowning: overexposure" when
water seeped through the insured's exposure suit, even if the
exposure suit malfunctioned. [425–427]

CONTRACT. Writ in the Superior Court dated June 24,
1966.

The action was heard without jury by *Taveira,* J., who
found for the defendant. The plaintiff alleged exceptions.

*John B. Higby* for the plaintiff.

*James P. Lynch, Jr.,* for the defendant.

REARDON, J. In this action of contract the plaintiff,
the beneficiary under a policy of life insurance issued by
the defendant, seeks to recover $5,000 payable as an ac-
cidental death benefit thereunder. The matter was heard
before a Superior Court judge sitting without jury. A
notice to admit facts was filed, to which the plaintiff did
not respond, and consequently there is no dispute on the
facts. G. L. c. 231, § 69. The plaintiff is here on excep-
tions to the denial of certain of his requests and the granting
of certain of the defendant's requests.

The insured, John L. Howard, a member of the United States Air Force at the time of his death, was on the night of July 11, 1965, in the crew of a four-engine radar patrol aircraft which because of mechanical difficulty was forced to ditch into the ocean. The aircraft was on a scheduled radar mission and carried Howard as an electronic technician. The difficulty developed about 10 P.M., and the aircraft went into the Atlantic Ocean some twenty minutes later. Howard and three other crew members survived the crash uninjured. They were wearing life jackets and Air Force exposure suits. They stayed in the ocean throughout the night, a period of eight to ten hours. Eventually water seeped through Howard's exposure suit, and by the time the men were rescued by a West German destroyer on the morning of July 12, 1965, about 100 miles off Nantucket Island, Howard had died. His death, according to the medical examiner's certificate, resulted from "Asphyxia due to drowning; overexposure." The judge found for the defendant, and the substitute bill of exceptions presents broadly · but one issue, viz., was the incident causing Howard's death such as to preclude the beneficiary of his insurance policy from recovering under the provision governing accidental death of the insured? That provision provides for double indemnity unless death was caused by a risk not covered. Among other provisions was the following: "No accidental death benefit will be payable . . . if death resulted from . . . travel or flight in, or descent from, any aircraft of which the Insured was a pilot, officer or member of the crew or in which he was participating in aeronautic or aviation training or in training, observation or maneuvers as a member of the military, naval or air forces of any country . . . ."

The plaintiff argues that the exclusion is inapplicable here because no causal connection is shown between the insured's status on the plane and his drowning. For the exclusion to apply the insured must have had a particular status on the aircraft (see the preceding contract provision).

The plaintiff contends that it would be useless to specify the status necessary to preclude recovery unless it was desired to require a causal connection between the death and the activity, and that "[o]ne aboard in a non-participating capacity who suffered death in circumstances identical to this insured would not be within the exclusion and would be covered." However, here it was obviously intended that the exclusion apply to the type of patrol flight on which the insured was frequently engaged and which included daily risks. The intention was not to exclude those risks taken by the insured when he made occasional, infrequent flights, such as on a commercial airliner. There are cases which have distinguished these two situations. See *Clapper* v. *Aetna Life Ins. Co.* 157 F. 2d 76 (D. C. Cir.); *Phoenix Mut. Life Ins. Co.* v. *Flynn,* 171 F. 2d 982 (D. C. Cir.); *Faron* v. *Penn Mut. Life Ins. Co.* 179 F. 2d 480 (3d Cir.); *Prudential Ins. Co.* v. *Barnes,* 285 F. 2d 299 (9th Cir.).

Here the insured died from drowning after he extricated himself from a downed plane. Whether the aviation clause precludes recovery is a question novel to Massachusetts. Courts in other jurisdictions differ. Cf. *Neel* v. *Mutual Life Ins. Co.* 131 F. 2d 159 (2d Cir.), *Green* v. *Mutual Benefit Life Ins. Co.* 144 F. 2d 55 (1st Cir.), and *Hobbs* v. *Franklin Life Ins. Co.* 253 F. 2d 591 (5th Cir.), with *McDaniel* v. *Standard Acc. Ins. Co.* 221 F. 2d 171 (7th Cir.) and *Chambers* v. *Kansas City Life Ins. Co.* 156 Cal. App. 2d 265.

In this case we hold the crash of the airplane was the legal cause of the insured's death. We do not agree with the plaintiff that the cause of the insured's death was not the ditching of the airplane but was rather an independent cause: "malfunction of the exposure suit." Actually there is no proof that it did malfunction. There is proof only that water seeped through it. We do not know how long such a suit should remain water tight. We have no knowledge of whether water seeped through the suits of Howard's

companions also. Indeed, it may be argued that even if the suit did malfunction causing the death of the insured, it was part of the equipment aboard the aircraft, and since the ditching of the aircraft necessitated the use of the suit Howard's death might be said to have resulted from "travel or flight in, or descent from . . . [the] aircraft."

A very similar fact situation can be found in *Order of United Commercial Travelers* v. *King*, 161 F. 2d 108 (4th Cir.). There a Civil Air Patrol observer safely extricated himself from a ditched plane and was seen alive two and one-half hours later. However, he was found dead from exposure four and one-half hours after the crash. The aviation clause denied recovery "for death resulting from participation, as a passenger or otherwise, in aviation or aeronautics . . . ." P. 109. The court also said at that page that "the exclusion clause clearly comprehends the very situation that here developed. Any other conclusion must ignore the plain meaning and presence of the word 'resulting.' . . . In undertaking an aerial flight over the ocean in a land-based plane, man must reckon with the perils of the sea . . . . That men may remain alive for varying periods of time before succumbing does not change the picture. We think it a rather violent fiction to say that death, under such circumstances, comes from accidental drowning." That the aircraft in the instant case was not proved to be land based is not of importance. A seaplane also faces the "perils of the sea," and the risk is substantially the same. We conclude that the judge was right in his interpretation of the policy provision.

*Exceptions overruled.*